IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VELMA GREEN,

    Plaintiff,

vs.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,

    Defendant.

No. 2:11-cv-1911 AC

<u>ORDER</u>

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and for supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The parties' cross motions for summary judgment are before the court. For the reasons discussed below, the court grants plaintiff's motion and remands the matter for further proceeding.

////

---

[1] Michael J. Astrue was previously named defendant. Carolyn W. Colvin is presently the acting Commissioner of Social Security. Accordingly, the court now substitutes in Carolyn W. Colvin as defendant. *See* Fed. R. Civ. P. 25(d).

1

I.  BACKGROUND

Plaintiff applied for a period of disability, DIB, and SSI on June 24, 2008, alleging disability beginning June 14, 2004. Administrative Record ("AR") 128-41. Plaintiff's applications were initially denied on November 7, 2008, and upon reconsideration on January 15, 2009. AR 79-85. On January 13, 2010, a hearing was held before administrative law judge ("ALJ") Timothy Snelling. AR 35. Plaintiff was represented by counsel at the hearing, at which she testified. AR 35-71.

In a decision dated March 19, 2010, the ALJ determined that plaintiff was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Act.[2] AR 10-20. The ALJ made the following findings (citations to 20 C.F.R. omitted):

1.   The claimant meets the insured status requirements of the

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

Social Security Act through December 30, 2009.

2. The claimant has not engaged in substantial gainful activity since June 14, 2004, the alleged onset date.

3. The claimant has had the following severe impairments: chronic low back, hips, legs, arms, neck and shoulder pain.

...

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

...

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can lift and carry 25 pounds both frequently and occasionally, stand and walk 6 hours in an 8-hour workday with normal breaks, sit six hours in an 8-hour workday with normal breaks and bend occasionally.

...

6. The claimant is unable to perform any past relevant work.

...

7. The claimant was born [in] 1955 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

...

3

|   |   |   |
|---|---|---|
| | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from June 14, 2004, through the date of this decision. |

AR 12-20.

Plaintiff requested that the Appeals Council review the ALJ's decision. AR 31-33. However, on February 16, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5.

## II.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

////

////

///

III.  ANALYSIS

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly rejected the opinions of three physicians who addressed plaintiff's physical limitations; and (2) the ALJ improperly rejected the opinion of a physician who performed a psychiatric evaluation.  Pl.'s Mot. Summ. J., ECF No. 15-1 at 14-24.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

  A.  Physicians' Opinions Addressing Plaintiff's Physical Limitations

Plaintiff contends the ALJ improperly rejected the opinions of Dr. Gabriel

5

Tanson, Dr. Donald Rossman, and Dr. Maliheh Massih. ECF No. 15-1 at 14-21. Dr. Tanson, one of plaintiff's treating physicians, began seeing plaintiff in January 2008. AR 351-56. On January 4, 2009, Dr. Tanson completed a musculoskeletal form. AR 402-04. Dr. Tanson found that plaintiff had tenderness to palpation, normal reflexes, muscle spasms and stiffness, and positive straight leg raising. She diagnosed plaintiff with "chronic pains." Id. Dr. Tanson also found that plaintiff's response to physical therapy and medication was poor, and that plaintiff had a poor prognosis. AR 403-04. In regards to plaintiff's functional limitations, Dr. Tanson opined that plaintiff had no limitations in reaching, handling or fingering; did not require an assistive devise for standing or sitting; and had no limitations affecting her ability to lift or carry. AR 403.

On December 13, 2009, Dr. Tanson completed a lumbar spine residual functional capacity questionnaire. AR 443-47. Dr. Tanson diagnosed plaintiff with advanced lumbar spine degenerative arthritis, sciatica of the back and legs, and chronic neck and shoulder pain. AR 443. Dr. Tanson found that plaintiff had pain in the chest, constant dull to sharp pain in the neck and shoulder, and chronic low back pain with sharp pain down the buttocks and legs upon movement or lifting. She also found that plaintiff had a reduced range of motion in both shoulders, arms and neck due to pain; negative result for straight leg raising test; sensory loss; tenderness; swelling in the neck and shoulders; muscle spasm in the neck and shoulder; muscle weakness; and impaired sleep due to painful turning of positions. AR 444.

Based on her findings, Dr. Tanson opined that plaintiff could only walk one to two blocks without rest or serve pain; sit for 15-20 minutes at one time; stand for 10-15 minutes at one time; sit and stand for less than 2 hours in an 8-hour workday; lift 10 pounds occasionally, but never 20 pounds; and occasionally twist, stoop, and crouch. AR 444-46. She further opined that plaintiff would need to be able to walk around for a 10 minute period every 15 minutes during an 8-hour workday, be able to shift from sitting to standing at will, and require 2-3 unscheduled 15 minute breaks in an 8-hour workday. AR 445. The record also contains a letter

6

dated June 13, 2008, in which Dr. Tanson wrote, "This note is to confirm that [plaintiff] is totally disabled due to chronic low back strain." AR 356.

Plaintiff was also treated by Dr. Donald Rossman. Dr. Rossman diagnosed plaintiff with low back pain, degenerative disc disease, lumbar stenosis, and thoracic strain. AR 305. Dr. Rossman opined that plaintiff could not walk or sit for a prolonged period of time. He explained that plaintiff "has minimal constant low back pain, which may increase to slight with prolonged sitting, bending, walking, twisting, and lifting." Id. It was also Dr. Rossman's opinion that plaintiff had lost fifty percent of her capacity for lifting, pushing, and pulling.

The record also contains the opinion of Dr. Massih, a consultative examining physician who conducted a comprehensive orthopedic evaluation on August 30, 2008. AR 378-381. Dr. Massih opined that plaintiff could stand and walk for 6 hours in an 8-hour workday with frequent breaks, sit 6 hours in an 8-hour workday, lift and carry 25 pounds both occasionally and frequently, and occasionally bend. Dr. Massih further opined that plaintiff was not limited in stooping or crouching, but was restricted in reaching, handling, feeling, or grasping. AR 381.

Plaintiff contends that the ALJ impermissibly rejected three opinions provided by treating physician Dr. Tanson. First, plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Tanson's June 2008 opinion that plaintiff was totally disabled. ECF No. 15-1 at 15. "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) (internal quotations omitted); see also 20 C.F.R. § 404.1527(d), (d)(1) ("A statement by a medical source that" the claimant is "'unable to work' does not mean that we will determine that you are disabled."). Thus, an ALJ is not obligated to provided detailed reasons for rejecting a medical experts opinion regarding the ultimate question of disability. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Because Dr. Tanson's June 2008 opinion regarded

7

the ultimate issue of disability, the ALJ was not required to give detailed reasons for rejecting that opinion.

Plaintiff also contends, in conclusory fashion, that the ALJ erred in rejecting Dr. Tanson's January 2009 opinion. ECF No. 15-1 at 17-18. The ALJ stated that he gave this opinion limited weight "because it is inconsistent with the record as a whole." AR 18. The ALJ then went on to discuss Dr. Tanson's clinical findings and opinion regarding plaintiff's functional limitations. Id. As discussed above, Dr. Tanson opined in January 2009 that plaintiff had no limitations in reaching, handling, or fingering; did not require an assistive devise for standing or sitting; and had no limitations affecting her ability to lift or carry. AR 403.

While the ALJ stated that he gave "limited weight" to this opinion, he did not actually reject Dr. Tanson's January 2009 opinion. The ALJ did not find that plaintiff requires an assistive devise for walking, or that she has limitations in reaching, handling, or fingering. AR 14. The ALJ's determination that plaintiff maintains the RFC to lift 25 pounds both frequently and occasionally also does not directly conflict with Dr. Tanson's opinion that plaintiff's impairments did not affect on her ability to lift or carry. Furthermore, the ALJ's finding that plaintiff suffers from chronic low back, hips, legs, arms, neck and shoulder pain is consistent with Dr. Tanson's January 2009 diagnosis of "chronic pains." Since the ALJ did not reject this opinion, plaintiff's argument lacks merit.

Plaintiff further contends that the ALJ erred by disregarding Dr. Tanson's December 2009 opinion. ECF No. 15-1 at 16-17. This objection has merit. The opinion Dr. Tanson provided in the December 13, 2009 Lumbar Spine Residual Functional Capacity Questionnaire was contradicted by the opinion of Dr. Massih. Accordingly, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Tanson's December 2009 opinion.

The ALJ provided the following discussion concerning Dr. Tanson's December 2009 opinion:

Limited weight is given to the opinion of Dr. S.K. Tanson, the claimant's primary care provider, because it is inconsistent with the record as a whole and unsupported by the medical evidence (Exhibit 17F).  Dr. Tanson opined that the claimant can never lift 20 pounds or more but can occasionally lift up to 10 pounds, can rarely climb and can occasionally twist, stoop or crouch, can sit, stand and/or walk for less than 2 hours in an 8-hour work day, but needed to include periods of walking around every 15 minutes for 10 minutes during the 8-hour work day and must take unscheduled breaks 2 to 3 times throughout the day and rest for 15 minutes before returning to work (17F/3-4).  In addition, Dr. Tanson opined that the claimant could only use her hands to grasp, turn and twist objects 10 % of the time during an 8-hour workday, use her fingers for fine manipulation 20 % of the time and could never use her arms to reach, including overhead (Exhibit 17F/4).  However, Dr. Tanson opined that the claimant did not need to use a cane or other assistive device and noted that straight leg raise testing results were negative (Exhibit 17F/3).

AR 18.

The ALJ's conclusory statement that Dr. Tanson's opinion is inconsistent with the record as a whole and unsupported by medical evidence does not justify the rejection of this opinion.  An ALJ may satisfy his burden of providing specific and legitimate reasons for rejecting a contradicted medical opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Embrey v. Bowen, 849 F.2d 418 (1988).  As explained by the Ninth Circuit:

> To say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his own conclusions.  He must set forth his own interpretation and explain why he, rather than the doctors, are correct.

Regenniter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999).

In this case, the ALJ failed to meet this standard.  The ALJ simply stated his conclusion that the December 2009 opinion was not supported by the record as a whole and provided a summary of Dr. Tanson's findings and opinion.  The ALJ did not articulate his interpretation of Dr. Tanson's findings, nor did he identify any specific evidence that undermines Dr. Tanson's opinion.

The ALJ took the same approach in assessing the opinion provided by Dr.

9

Rossman, plaintiff's other treating physician. Notably, Dr. Rossman opined that plaintiff could not sit for prolonged periods. The ALJ did not include this limitation in plaintiff's RFC. Rather than providing a specific reason for rejecting this opinion, the ALJ simply stated that he gave some weight to Dr. Rossman's opinion "to the extent that it is consistent with the record as a whole."

The ALJ's conclusory rejection of opinion evidence did not end with plaintiff's treating physician. For instance, the ALJ stated that he gave some weight to the opinion of Dr. Massih, but only "to the extent that it is consistent with the record as a whole." This conclusory statement is then followed by a summary of Dr. Massih's opinion. After summarizing the opinion, the ALJ states, without explanation, that he agrees with Dr. Massih's overall findings, but "that the additional requirement that [plaintiff] take frequent breaks from walking or standing is not supported by the medical evidence." AR 17. Again, this conclusory statement does not satisfy the specific and legitimate standard.

Accordingly, the ALJ erred by rejecting the opinions of Drs. Tanson, Rossman, and Massih without providing legally sufficient reasons.

B. Physicians' Opinions Addressing Plaintiff's Mental Limitations

Plaintiff further argues that the ALJ failed to properly evaluate the opinion of Dr. Kalman, an examining physician. ECF No. 15-1 at 21-23. Dr. Kalman examined plaintiff on December 28, 2009. AR 499. It was Dr. Kalman opinion that plaintiff was mildly limited in her ability to understand, remember, and carry out details instructions; mildly limited in her ability to maintain attention and concentration for extended periods; and moderately limited in her ability to accept instructions and to respond appropriately to criticism from supervisors. AR 504-05. Dr. Kalman also opined that the following work related stressors would increase the level of plaintiff's impairment: 1) unruly, demanding or disagreeable customers even on an infrequent basis; production demands or quotas; a demand for precision; a need to make quick and accurate, independent decisions in problem solving on a consistent basis; and a need to make accurate,

10

independent decisions in problem solving on a consistent basis. AR 505. Lastly, it was Dr. Kalman's opinion that plaintiff would be unable to complete a full workday about twice a month due to her impairments. AR 506.

The record also contains the opinion of Dr. Daigle, a consulting physician. Dr. Daigle conducted a complete psychiatric evaluation on September 12, 2008. AR 357-362. He diagnosed plaintiff with adjustment disorder with anxious mood, treated. AR 361. He opined that plaintiff was not significantly limited in her ability to understand remember and carry out simple one or two-step instructions; not significantly limited in following detailed and complex instruction; slightly limited in ability to relate and interact with supervisors, co-workers, and the public; slightly limited in ability to maintain concentration and attention, persistence and pace; slightly limited in ability to associate with day-to-day work activity; and slightly to moderately limited in ability to adapt to stresses common to a normal work environment. AR 361-62. Dr. Daigle further opined that plaintiff is capable of resuming her usual employment. AR 361.

Unsurprisingly, the ALJ gave also some weight to Dr. Kalman's opinion to the extent that it is consistent with the record as a whole. AR 18. He also gave some weight to Dr. Daigle's opinion "to the extent that it is consistent with the record as a whole." AR 17. Although the ALJ simply stated that he gave some weight the medical opinions concerning plaintiff's functional limitations, [3] it is clear from the RFC that the ALJ relied more heavily on the less restrictive opinion of Dr. Daigle.

Plaintiff contends that the ALJ erred by failing to provide legally sufficient reasons for rejecting Dr. Kalman's opinion. ECF No. 15-1 at 21-23. Where, as here, the ALJ is presented with conflicting medical opinions of equal weight, the ALJ may resolve the conflict and need not

---

[3] In addition to these two opinions, the ALJ briefly mentioned the opinions of consultive examiners. The ALJ complete discussion of these opinions consisted of the following: "Some weight is also given to the opinions of the State agency psychological consultants to the extent that they are consistent with the record as a whole. The state agency psychological consultants opined that the claimant's mental impairment is non-severe."

11

provide specific and legitimate reasons. See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."); Andrews, 53 F.3d at 1041 (requiring specific and legitimate reasons only where the conflicting opinion is not based on independent clinical findings); Sheffer v. Barnhart, 45 Fed. Appx. 644, 645 (9th Cir. 2002) ("Because the ALJ was entitled to resolve this evidentiary conflict between conflicting opinions of equal weight, he did not need to provide specific and legitimate reasons for rejecting [two treating physicians' opinions]."); Watson v. Barnhart, 2003 WL 21838474, *4 (N.D. Cal. August 1, 2003) (finding that ALJ decision was consistent with the opinion of one of the plaintiff's treating physicians and, therefore, the ALJ "did not need to articulate specific and legitimate reasons for disregarding [another treating physician's] opinion.").

Here, Dr. Daigle and Dr. Kalman were both examining physicians and their opinions were therefore entitled to equal weight. Accordingly, the ALJ was not required to provide explicit reasons for accepting Dr. Daigle's opinion over the equally weighted opinion of Dr. Kalman. Accordingly, the ALJ did not err in evaluating the opinion evidence concerning plaintiff's mental limitations.

IV. CONCLUSION

The court finds troubling the ALJ's handling of the opinion evidence in this case. Throughout his decision, the ALJ did little more than supply a summary of each medical opinion followed by a boilerplate statement that some or no weight was given to each opinion based on an unidentified lack of support from the record. By utilizing this tactic, the ALJ did not apply the proper legal standard in rejecting the opinions of Drs. Tanson, Rossman, and Massih and utterly failed to explain what opinion evidence supported his decision. The matter must therefore be remanded for further proceedings consistent with this opinion.

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. Defendant's motion for summary judgment is denied;

3. The Clerk is directed to enter judgment in the plaintiff's favor; and

4. This action is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED: March 25 2013.

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE